

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4434 | **DATE** | 11/20/2002 |
| **CASE TITLE** | NEFF vs. CAPITAL ACQUISITIONS & MANAGEMENT CO et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' motions to dismiss are granted. This action is dismissed in its entirety. Any pending motions are moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | NOV 21 2002 date docketed | 33 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | 11/20/2002 | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| JS | courtroom deputy's initials | JS mailing deputy initials | |

Date/time received in central Clerk's Office



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Nathan Neff, )
)
      Plaintiff, )
)
v. ) No. 02 C 4434
)
Capital Acquisitions & Management )
Company and Capital One, F.S.B., )
)
      Defendants. )
)

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On June 20, 2002, plaintiff Nathan Neff ("Neff") filed a class action complaint against defendants Capital Acquisitions & Management Company ("CAMCO") and Capital One, F.S.B. ("Capital One") alleging unlawful credit and collection practices in violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667f (2002), the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692o (2002), and the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS § 505/2 (2002). On September 17, 2002, CAMCO and Capital One (collectively referred to as "defendants") moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Neff's complaint for failure to state a claim upon which relief can be granted. Having considered this matter fully, for the reasons stated herein, defendants' motions to dismiss are granted.

## STATEMENT OF FACTS[1]

In about 1990, Neff obtained a credit card issued by Citibank. (Compl. ¶ 8.) Sometime thereafter, Neff fell behind on the account. (Compl. ¶ 10.) After the debt was delinquent, Citibank sold it to Capital One. (Compl. ¶ 11.) In about 1997, while the debt was in the hands of Capital One, Neff paid $536 to Capital One. It was represented to Neff that such payment was accepted in full satisfaction of the debt, and Neff's payment instrument was so marked. However, this was not reflected on Capital One's books and records. (Compl. ¶ 13.) On or about April 19, 2002, CAMCO sent Neff a letter stating that it had purchased Neff's credit card account from Capital One and that Neff owed $2,835.32 on it. (Compl. ¶ 14.)

TILA, 15 U.S.C. § 1637(b), and Regulation Z, 12 C.F.R. § 226.7 (2002), require that the "creditor" on an open end credit account, such as a credit card, furnish a periodic statement during any month in which there is an outstanding balance or for which a finance charge is imposed. The purpose of the monthly billing statement is to apprise the consumer, among other things, that a balance is claimed to be owed, the amount of the balance, and the extent to which failure to pay the balance in full will result in an increase in the amount owed during the month as a result of the accrual of finance charges. (Compl. ¶ 26.) It is the policy and practice of Capital One and CAMCO to assess finance charges on delinquent accounts at annual percentage rates as high as 25% even though no periodic statements are provided. (Compl. ¶ 27.) At no time between 1997 and the filing of the complaint had Capital One or CAMCO sent monthly statements to Neff. (Compl. ¶ 21.) No monthly statement is sent on delinquent credit card accounts that Capital One and CAMCO

---

[1] The following facts are taken from the well-pled allegations of Neff's complaint and must be accepted as true for purposes of this motion to dismiss. Thompson v. Illinois Dep't of Prof'l Regulation, 300 F.3d 750, 753 (7th Cir. 2002).

2

purchase; however, Capital One and CAMCO continue to accrue interest on such accounts. (Compl. ¶¶ 23, 24.)

Neff asserts in count I, against Capital One, and count II, against CAMCO, that defendants violated TILA by failing to send monthly statements. Neff alleges in count III, against Capital One, and count IV, against CAMCO, that the collection of interest by a debt collector with respect to credit card accounts on which monthly statements have not been furnished is a deceptive and unfair practice in violation of the FDCPA. Neff also claims in count V, against CAMCO, and count VI, against Capital One, that defendants violated the ICFA by engaging in the same conduct. With respect to the FDCPA and ICFA claims, Neff contends that the practice is deceptive because (1) the creditor or debt collector is failing to furnish material information required to be furnished by law, and (2) without periodic statements, consumers are unlikely to realize that the debt is increasing through the assessment and compounding of interest. (Compl. ¶ 31.) Neff claims that the practice is unfair because (1) the failure to furnish periodic statements is contrary to public policy, as established by TILA, and (2) it causes substantial injury to consumers because without periodic statements, they are unlikely to realize that the debt is increasing through the assessment and compounding of interest and the extent of the increase. (Compl. ¶ 32.) Finally, in count VII, Neff asserts a FDCPA claim against Capital One for settling Neff's debt and then selling it to CAMCO. Defendants claim, inter alia, that because they are not "creditors" within the meaning of TILA, they had no obligation to provide the monthly statements to Neff.

In deciding these motions to dismiss, this court has considered the following: defendants' motions to dismiss and supporting memoranda, plaintiffs' response, defendants' replies, plaintiffs'

3

motion for leave to respond and surreply, Capital One's response and motion for leave to respond, and plaintiffs' objection to Capital One's motion for leave to respond.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows this court to dismiss a complaint that fails to state a claim upon which relief may be granted. In considering the merits of a motion made pursuant to Rule 12(b)(6), the well-pled allegations of the complaint must be accepted as true. Thompson v. Illinois Dep't of Prof'l Regulation, 300 F.3d 750, 753 (7th Cir. 2002). In addition, all ambiguities will be construed in favor of the non-moving party. Id. A court generally should only dismiss a complaint where it is clear that no relief could be granted consistent with the allegations. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). Rule 8(a) of the Federal Rules of Civil Procedure states that a complaint must identify the basis of jurisdiction and contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1077-78 (7th Cir. 1992). Complaints can be "short and simple, giving the adversary notice while leaving the rest to further documents." Id. It follows that in deciding a Rule 12(b)(6) motion to dismiss, this court must ask whether relief is possible under any set of facts that could be established consistent with the allegations in the complaint. See id.

## ANALYSIS

I.  Truth in Lending Act Claim

In TILA, the term "creditor" is statutorily defined in 15 U.S.C. § 1602(f) as:

> a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is <u>the person to whom the debt</u> arising from the consumer credit transaction <u>is initially payable</u> on the face of the evidence of indebtedness or, if there

4

is no such evidence of indebtedness, by agreement. Notwithstanding the preceding sentence, in the case of an open-end credit plan involving a credit card, <u>the card issuer</u> and any person who honors the credit card and offers a discount which is a finance charge are creditors. For the purpose of the requirements imposed under part D of this subchapter and sections 1637(a)(5), 1637(a)(6), 1637(a)(7), 1637(b)(1), 1637(b)(2), 1637(b)(3), 1637(b)(8), and 1637(b)(10) of this title, <u>the term "creditor" shall also include card issuers</u> whether or not the amount due is payable by agreement in more than four installments or the payment of a finance charge is or may be required, and the Board shall, by regulation, apply these requirements to such card issuers, to the extent appropriate, even though the requirements are by their terms applicable only to creditors offering open-end credit plans. Any person who originates 2 or more mortgages referred to in subsection (aa) of this section in any 12-month period or any person who originates 1 or more such mortgages through a mortgage broker shall be considered to be a creditor for purposes of this subchapter.

15 U.S.C. § 1602(f) (emphasis added).

Section 1637, and Regulation Z, 12 C.F.R. § 226.7, provide that a "creditor" is required to send certain statements to a debtor as long as there is an outstanding balance or a finance charge is imposed. With regard to this requirement, section 1637(b) states:

<u>The creditor</u> of any account under an open end consumer credit plan shall transmit to the obligor, for each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed, a statement setting forth each of the following items to the extent applicable:

(1) The outstanding balance in the account at the beginning of the statement period.

(2) The amount and date of each extension of credit during the period, and a brief identification, on or accompanying the statement of each extension of credit in a form prescribed by the Board sufficient to enable the obligor either to identify the transaction or to relate it to copies of sales vouchers or similar instruments previously furnished . . . .

(3) The total amount credited to the account during the period.

(4) The amount of any finance charge added to the account during the period, itemized to show the amounts, if any, due to the application of percentage rates and the amount, if any, imposed as a minimum or fixed charge.

(5) Where one or more periodic rates may be used to compute the finance charge, each such rate, the range of balances to which it is applicable, and, unless the annual percentage rate (determined under section 1606(a)(2) of this title) is required to be disclosed pursuant to paragraph (6), the corresponding nominal annual percentage rate determined by multiplying the periodic rate by the number of periods in a year.

(6) Where the total finance charge exceeds 50 cents for a monthly or longer billing cycle, or the pro rata part of 50 cents for a billing cycle shorter than monthly, the total finance charge expressed as an annual percentage rate (determined under section 1606(a)(2) of this title), except that if the finance charge is the sum of two or more products of a rate times a portion of the balance, the creditor may, in lieu of disclosing a single rate for the total charge, disclose each such rate expressed as an annual percentage rate, and the part of the balance to which it is applicable.

(7) The balance on which the finance charge was computed and a statement of how the balance was determined. If the balance is determined without first deducting all credits during the period, that fact and the amount of such payments shall also be disclosed.

(8) The outstanding balance in the account at the end of the period.

(9) The date by which or the period (if any) within which, payment must be made to avoid additional finance charges, except that the creditor may, at his election and without disclosure, impose no such additional finance charge if payment is received after such date or the termination of such period.

(10) The address to be used by the creditor for the purpose of receiving billing inquiries from the obligor.

15 U.S.C. § 1367(b) (emphasis added).

Defendants claim they are not statutorily obligated to transmit periodic billing cycle statements because they are not within the definition of "creditor" under TILA. The first sentence of § 1602(f) provides a two-part test for determining who is a creditor. This sentence makes it clear that both parts of the test must be met for an individual or entity to be within the first sentence's statutory definition of creditor, and to be a creditor, one must be "the person to whom the debt arising from the consumer credit transaction is initially payable . . . ." Neither Capital One nor

CAMCO is alleged to be the person to whom the debt was initially payable; Citibank was. (Compl. ¶ 8.)[2] Thus, defendants are not creditors under the first sentence of § 1602(f).

Neff asserts, however, that defendants are creditors under the second and third sentences of § 1602(f) because they are "card issuers." The relevant portions of the second and third sentences define a creditor, in the case of an open-end credit plan, as a "card issuer."[3] A person can meet the statutory definition of "card issuer" in two alternative ways: (1) as "any person who issues a credit card," or (2) as a person who is "the agent of such person [(i.e., the credit card issuer)] with respect to such card." 15 U.S.C. § 1602(n). A "credit card" is defined as "any card, plate, coupon book or other credit device existing for the purpose of obtaining money, property, labor, or services on credit." 15 U.S.C. § 1602(k).

In this case, Neff does not allege that Capital One or CAMCO initially issued Neff's credit card. Neff, however, claims that Capital One and CAMCO became "card issuers" when the initial Citibank credit card debt was sold to them. Neff's argument fails under both statutory definitions of "card issuer" in TILA.

First, although Capital One issues credit cards to the public, this alone is not sufficient to make Capital One a "card issuer" under TILA as to Neff. It belies logic to believe Congress, in enacting TILA, intended that every time a company that purchases debt or delinquent credit card accounts, on which credit privileges have been terminated by the initial issuer of the card, itself

---

[2] In addition, Neff does not allege that Capital One or CAMCO regularly extend consumer credit to anyone. This court takes judicial notice, however, that Capital One has and continues to regularly extend credit to consumers.

[3] Neff does not allege that defendants are "person[s] who honor[] the credit card and offer[] a discount which is a finance charge." 15 U.S.C. § 1602(f).

7

becomes a "card issuer" under TILA and in turn a "creditor" subject to TILA's provisions simply because that company is also a card issuer to other consumers.[4] This court cannot find that a financial institution, which issues credit cards to certain persons, becomes a "creditor" when it, in unrelated transactions, purchases accounts receivable, on accounts of other persons to whom it has never issued a credit card, simply because the company is also a card issuer to other consumers. In this case, Neff alleges that the "debt was delinquent" (Compl. ¶¶ 11, 12, 16) and makes no allegation that Capital One or CAMCO, independently or on behalf of Citibank, ever extended credit to Neff. Further, this court's interpretation of the statutory definition of "card issuer" does not render the second sentence of the "creditor" definition meaningless.[5] This court can think of circumstances where one could be a creditor without the debt being initially payable to it. For example, suppose Company A issued a credit card on behalf of and payable to Bank B. Bank B, for efficiency and economic purposes, had contracted with Company A to manage, issue, and oversee the credit accounts. Bank B pays Company A for these services but all accounts receivable are assets of Bank B. Under TILA, because a debt would be initially payable to Bank B, it is a "creditor" under the first sentence, and because Company A is the "card issuer," it is also a "creditor." Finally, there is no allegation that Capital One or CAMCO issued a "credit card" to Neff. Neff's "accounts" with defendants were not for the purpose of "obtaining money, property, labor, or services on credit." There is no allegation that Capital One or CAMCO extended any credit privileges to Neff.

---

[4] Neff may be correct that a purchasing entity is a "creditor" when it buys current credit accounts and offers the consumer a line of credit to pay for additional purchases. However, Neff's allegations make clear that what defendants purchased was a "delinquent credit card account" (Compl. ¶ 15), i.e., "debt." (Compl. ¶¶ 11, 12, 16).

[5] A court should not construe a statute so that parts become superfluous. See United States v. Ray, 238 F.3d 828, 833 (7th Cir. 2001).

8

Moreover, there is no allegation that Neff was authorized to obtain property, labor, or services on the strength of Capital One's or CAMCO's credit.

Second, Neff cannot maintain a viable claim that either Capital One or CAMCO was Citibank's, the card issuer, "agent with respect to the card." Neff alleges that defendants purchased his delinquent accounts. He does not allege that Capital One, on behalf of Citibank, or CAMCO, on behalf of Capital One, were attempting to collect the debt on behalf of their principals. Further, the pertinent commentary in the Code of Federal Regulations states that "a financial institution may become the agent of the card issuer if an agreement between the institution and the card issuer provides that the cardholder may use a line of credit with the financial institution to pay obligations incurred by use of the credit card." Truth in Lending; Official Staff Commentary, 12 C.F.R. pt. 226.2, Supp. I, Commentary 2(a)(7), p. 329 (2002).[6] Neff's complaint does not allege that Capital One or CAMCO offered Neff "a line of credit with" either financial institution.

Neff is right that "[t]he nature of a credit card or charge card is that future transactions and dealings are expected." (Pls.' Resp. at 8.) However, there are no allegations that defendants extended credit to Neff or sought future dealings with him. In fact, letters from CAMCO, which were attached as Appendix A and Appendix B,[7] evidence that CAMCO was merely trying to collect the debt due on the delinquent accounts, not attempting to cultivate future business. Under either alternative statutory definition of "card issuer," defendants are not "card issuers" under TILA. As

---

[6] The Staff Interpretations construing TILA and its implementing regulations are held to be dispositive unless demonstrably irrational. Hardison v. General Fin. Corp., 738 F.2d 893, 895 (7th Cir. 1984) (quoting Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 565 (1980)).

[7] Because these letters were attached as exhibits to Neff's complaint, they are deemed to be a part of the pleadings and may be considered in deciding this motion to dismiss. Thompson v. Illinois Dep't of Prof'l Regulation, 300 F.3d 750, 753 (7th Cir. 2002).

9

discussed further below, because defendants purchased delinquent accounts, i.e., debt on which defendants charged interest, and extended no credit privileges of their own, defendants are "debt collectors" subject to the FDCPA, not "creditors" subject to TILA.

Finally, Neff argues that defendants are obligees or assignees and thus assumed their predecessor's obligation to send out periodic statements. However, the first sentence of § 1602(f) makes clear that the "only" obligee that qualifies as a TILA "creditor" is "the person to whom the debt . . . is initially payable." Unless one is the "agent" of a "card issuer," Congress has specifically excluded subsequent obligees from TILA's creditor definition. This court cannot alter Congress's carefully crafted definition of "creditor;" only Congress itself can do that. Thus, Neff's TILA counts, counts I and II, must be dismissed.

II. Fair Debt Collection Practices Act Claims

Neff alleges that defendants violated 15 U.S.C. §§ 1692e and 1692f by collecting and attempting to collect interest when no periodic statements had been furnished. As discussed in detail above, Neff cannot state a claim under TILA. Because his FDCPA claim is entirely predicated on a nonexistent TILA violation,[8] Neff's FDCPA claim must be dismissed.

Although Neff's FDCPA claim is based on a nonexistent TILA violation, this court notes that § 1692e ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.") and § 1692f ("A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.") are not dependent on the

---

[8] Neff states that attempting "to collect interest on a credit card account on which periodic statements have not been furnished" (Compl. ¶ 30) is deceptive because "the creditor or debt collector is failing to furnish material information <u>required to be furnished by law</u>" (Compl. ¶ 31) (emphasis added), and such practice is unfair because "the failure to furnish periodic statements is contrary to public policy, <u>as established by TILA</u> . . . ." (Compl. ¶ 32) (emphasis added).

10

existence of any TILA violations. In other words, the use of any false, deceptive, or misleading representation or any unfair or unconscionable means of collection constitute violations of the FDCPA. As quoted above, sections 1692e and 1692f state that a debt collector[9] "may not use" various means to collect a debt. However, the FDCPA does not place an affirmative obligation on a debt collector to, for example, send monthly statements. Because there is no affirmative obligation under the FDCPA to send monthly statements, and Neff does not allege deceptive or unfair practices independent of defendants' alleged TILA obligations, counts III and IV fail to state a claim upon which relief can be granted and therefore are dismissed.

Count VII of Neff's complaint alleges that Capital One violated the FDCPA by selling to CAMCO Neff's debt, resulting in further collection action against and harassment of Neff, when the debt should have been properly reflected as satisfied on Capital One's books and records. (Compl ¶ 87.) Neff asserts that by selling his debt to CAMCO, Capital One was "indirectly" attempting to collect the debt. However, Neff alleges that Capital One "did in fact purport to sell" (Compl. ¶ 15) Neff's debt to CAMCO and that "the purported debt was delinquent at the time of the sale" (Compl. ¶ 16). Neff does not allege anywhere in his complaint that Capital One hired CAMCO to collect the debt on Capital One's behalf. There is a significant difference between (1) Capital One still retaining ownership of Neff's debt but hiring a collection agency to work under Capital One's control, and (2) Capital One selling the debt to a third party, CAMCO. The distinction is that in the first instance Capital One is still involved with Neff's debt, but in the second situation, Capital One sold Neff's

---

[9] Neff alleges that because his debt was delinquent, defendants were "debt collectors." (Compl. ¶¶ 12, 16.) Section 1692a defines "debt collector," in relevant part, as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts . . . ." 15 U.S.C. § 1692a(6). Pursuant to this definition and Neff's allegations, both Capital One and CAMCO are "debt collectors" under the Act.

debt and is therefore no longer involved with it at all. Contrary to Neff's hypothetical in his Response to Defendants' Motions to Dismiss, page 16, there is no allegation that Capital One engaged in either direct or indirect debt collection efforts after the sale to CAMCO of Neff's debt. Neff's complaint's allegations make clear that in selling his debt to CAMCO, Capital One was no longer trying to collect Neff's debt for itself.[10] Capital One is not alleged to be engaging in any collection practice; rather, it simply sold an asset, an account receivable, at a discount. Thus, count VII must be dismissed for failure to state a claim.

III. <u>Illinois Consumer Fraud Act Claim</u>

Because this court has dismissed Neff's TILA and FDCPA claims, the federal claims over which this court has original jurisdiction, this court, in its discretion, declines to exercise supplemental jurisdiction over Neff's state law claims in counts V and VI. <u>See</u> 28 U.S.C. § 1367(c)(3).

Moreover, without addressing the merits of Capital One's preemption argument, this court finds that Neff's ICFA counts fail to state a claim.[11] In order to state a claim under ICFA, a plaintiff

---

[10] The FDCPA regulates only debt collection activity. <u>See</u> 15 U.S.C. § 1692e ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."); 15 U.S.C. § 1692f ("A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.").

[11] Section 505/2 states:
Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. . . .
815 ILCS § 505/2 (2002).

must allege that (1) a defendant engaged in a deceptive act or practice (2) with the intent that the plaintiff rely on the deception (3) in the course of trade or commerce, and (4) the deception was the proximate cause of the claimant's alleged injury. See Connick v. Suzuki Motor Co., 174 Ill. 2d 482, 501, 675 N.E.2d 584, 593 (Ill. 1997). In addition, "a complaint alleging a violation of consumer fraud must be pled with the same particularity and specificity as that required under common law fraud." Id. As discussed above, Neff does not allege an independent unfair or deceptive act or practice by defendants.[12] Neff does not allege that defendants made any untrue or misleading statement to him with the intent that he take some action as a result. As a result, counts V and VI are dismissed.

## CONCLUSION

For the above stated reasons, defendants' motions to dismiss are granted. This case is dismissed in its entirety. Any pending motions are moot.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: November 20, 2002

---

[12] The Illinois Supreme Court has held that compliance with TILA precludes liability under ICFA. Jackson v. South Holland Dodge, Inc., 197 Ill. 2d 39, 46-47, 755 N.E.2d 462, 467-68 (Ill. 2001).

13